Thiago M. Coelho, SBN 324715
*thiago.coelho@wilshirelawfirm.com*
Chumahan B. Bowen, SBN 268136
*chumahan.bowen@wilshirelawfirm.com*
Jennifer M. Leinbach, SBN 281404
*jennifer.leinbach@wilshirelawfirm.com*
Jesenia A. Martinez, SBN 316969
*jesenia.martinez@wilshirelawfirm.com*
Jesse S. Chen, SBN 336294
*jesse.chen@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff and all others similarly situated*

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YVETTE PRICE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST FINANCIAL SECURITY, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:24-cv-10985-MCS-RAO<br><br>**CLASS ACTION**<br><br>*Assigned to:*<br>*Hon. Mark C. Scarsi, Ctrm. 7C – 7th Floor*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Hearing:**<br>Date: April 20, 2026<br>Time: 9:00 a.m.<br><br>Complaint Filed: December 20, 2024<br>Trial Date: None Set |

**TO THE COURT, THE PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 20, 2026 at 9:00 a.m., Plaintiff Yvette Price, will and hereby does move the Court for an order pursuant to Federal Rule of Civil Procedure 23: (1) granting preliminary approval of the Agreement[1]; (2) authorizing retention of Simpluris as the Administrator; (3) approving the form and matter of notice of the settlement to the Classes; and (4) setting the Final Approval Hearing as well as the schedule for various deadlines in connection with the Agreement.

This unopposed motion is supported by the below memorandum of points and authorities, the Agreement and exhibits thereto, the supporting declarations and exhibits attached thereto, all prior pleadings in this action, and such additional evidence or argument as the Court may request.

Dated: March 23, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Jesenia A. Martinez*
Thiago M. Coelho
Chumahan B. Bowen
Jennifer M. Leinbach
Jesenia A. Martinez
Jesse S. Chen

*Attorneys for Plaintiff and all others similarly situated*

[1] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the settlement agreement, filed concurrently herewith as Exhibit 1 to the Declaration of Jesenia A. Martinez.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ 1

TABLE OF AUTHORITIES ........ 3

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 1

III. SETTLEMENT TERMS SUMMARY ........ 3

A. The Settlement Classes ........ 3

B. Settlement Benefits ........ 3

C. Distribution of Class Payments ........ 5

D. Class Notice and CAFA Notice ........ 5

E. Release of Claims ........ 5

F. Attorneys' Fees and Expenses, and Service Award ........ 6

G. Administrator ........ 7

IV. ARGUMENT ........ 7

A. The Proposed Settlement Warrants Preliminary Approval ........ 7

B. The Settlement Is Fair, Reasonable, and Adequate ........ 8

1. Class Members Have Been Adequately Represented ........ 8

2. The Settlement Is the Product of Extensive Arm's-Length Negotiations Among Experienced Counsel ........ 9

3. The Settlement Provides Substantial Benefits to the Classes . 10

4. No Other Agreements Exist ........ 16

5. The Distribution Plan Treats Class Members Equally ........ 16

6. Opportunity for Exclusion ........ 17

7. The Remaining *Hanlon* Factors Are Satisfied ........................ 17

V. CERTIFICATION FOR SETTLEMENT PURPOSES IS PROPER ...... 18

A. The Classes Meet the Requirements of Rule 23(a) .......................... 19

B. The Classes Meet the Requirements of Rule 23(b) .......................... 22

VI. THE NOTICE PROGRAM WARRANTS APPROVAL ........................ 25

VII. CONCLUSION ........................................................................... 26


WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

# TABLE OF AUTHORITIES

**CASES**

*Abubaker v. Dominion Dental USA, Inc.*,
No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) ..................... 21

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015)........................................................................ 7

*Alliance Ophthalmology, PLLC v. ECL Grp., LLC*,
No. 1:22-cv-296, 2024 WL 3203226 (M.D.N.C. June 27, 2024)........................ 12

*Alonzo v. Maximus, Inc.*,
275 F.R.D. 513 (C.D. Cal. 2011) .................................................................. 18

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................... 19, 22

*Amgen Inc. v. CT Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)...................................................................................... 23

*Attias v. CareFirst, Inc.*,
346 F.R.D. 1 (D.D.C. 2024)........................................................................... 19

*Barletti v. Connexin Software, Inc.*,
No. 2:22-cv-04676, 2024 WL 1096531 (E.D. Pa. Mar. 13, 2024)...................... 21

*Barletti v. Connexin Software, Inc.*,
No. 2:22-CV-04676-JDW, 2024 WL 1096531 (E.D. Pa. Mar. 13, 2024)........... 13

*Beck v. Maximus, Inc.*,
547 F.3d 291 (3d Cir. 2006).......................................................................... 22

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980) ...................................................................... 18

*Engel v. Scully & Scully, Inc.*,
279 F.R.D. 117 (S.D.N.Y. 2011) ................................................................... 20

*Federal Ins. Co. v. Caldera Med., Inc.*,
No. 2:15-cv-00393-SVW-PJW, 2016 WL 5921245 (C.D. Cal. 2016).................. 9

*Fox v. Iowa Health Sys.*,
No. 3:18-cv-00327, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021) ...................... 17

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) .......................................................................... 24

*Gribble v. Cool Transports Inc.*,
No. CV 06-04863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008)... 18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)..............................................................7, 8, 10, 22

*Hefler v. Wells Fargo & Co.*,
No. 15-cv-00540-JLS-AGS, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018). 16, 18

*In re Amgen Inc. Sec. Litig.*,
No. CV 7-2536 PSG (PLAx), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ... 15

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ...................................................... 13

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) ............................................................................ 15

*In re Apple Inc. Device Performance Litig.*,
No. 5:18-md-02827-EJD, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021).......... 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)............................................................................. 15

*In re Brinker Data Incident Litig.*,
No. 3:18-cv-0686, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ...................... 23

*In re Cap. One Consumer Data Sec. Breach Litig.*,
No. 119MD2915AJTJFA, 2022 WL 18107626 (E.D. Va. Sept. 13, 2022)... 13, 25

*In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*,
341 F.R.D. 128 (D. Md. 2022)........................................................................... 19

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
No. 21-md-2994, 2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) ......................... 12

*In re Mednax Svcs. Inc., Customer Data Sec. Breach Litig.*,
No. 21-MD-02994-RAR, 2024 WL 1554329 (S.D. Fla. Apr. 10, 2024)............ 24

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
522 F.3d 6 (1st Cir. 2008)................................................................................... 20

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

*In re Nexus 6P Prod. Liab. Litig.*,
No. 17-cv-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ............. 16

*In re NVIDIA Corp. Derivative Litig.*,
No. C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ....... 9

*In re Oracle Sec. Litig.*,
No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. 1994) ................................ 16

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. 14-md-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017).................. 23, 24

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
No. 1:17-md-2807, 2020 WL 6701992 (N.D. Ohio Nov. 13, 2020) ................... 19

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008)............................................................................ 7

*In re Target Corp. Customer Data Sec. Breach Litig.*,
309 F.R.D. 482 (D. Minn. 2015)....................................................................... 19

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
MDL No. 1917, No. C-07-5944 JST, 2016 WL 6778406 (N.D. Cal. 2016) ....... 16

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
No. 1:14-md-2583, 2017 WL 9605206 (N.D. Ga. Sept. 22, 2017) ..................... 12

*Khoja v. Orexigen Therapeutics, Inc.*,
No. 15-cv-00540-JLS-AGS, 2021 WL 5632673 (S.D. Cal. 2021)...................... 16

*Kulesa v. PC Cleaner, Inc.*,
No. CV 12-0725 FMO (ANx), 2014 WL 12581769 (C.D. Cal. 2014)............... 10

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012)............................................................................. 25

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013)............................................................................. 19

*Meaden v. HarborOne Bank*,
No. 23-CV-10467-AK, 2023 WL 3529762 (D.Mass. May 18, 2023)................. 20

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)..................................................................................... 14, 25

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

*Norris v. Mazzola*,
No. 15-cv-04962-JSC, 2017 WL 6493091 (N.D. Cal. Dec. 19, 2017)................ 18

*Roberts v. Source for Pub. Data*,
No. 08-CV-04167-NKL, 2009 WL 3837502 (W.D. Mo. Nov. 17, 2009)........... 24

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)........................................................................ 18

*Satchell v. Fed. Express Corp.*,
No. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) 10

*Savidge v. Pharm-Save, Inc.*,
No. 3:27-cv-186, 2024 WL 1366832 (W.D. Ky. Mar. 29, 2024)........................ 19

*Silver Buckle Mines, Inc. v. United States*,
132 Fed. Cl. 77 (Fed. Cl. 2017) ..................................................................... 24

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)...................................................................................... 23

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)....................................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338, 350 (2011)..............................................................18, 20, 23

*Webb v. Injured Workers Pharmacy, LLC*,
72 F.4th 365 (1st Cir. 2023)........................................................................... 17

*Zinser v. Accufix Research Inst.*,
253 F.3d 1180 (9th Cir. 2001)........................................................................ 18

**RULES**

Fed. R. Civ. P. 12(b)(6)............................................................................................ 8

Fed. R. Civ. P. 23 ........................................................................................ 1, 7, 18

Fed. R. Civ. P. 23(a)................................................................................................ 19

Fed. R. Civ. P. 23(a)(1) .......................................................................................... 19

Fed. R. Civ. P. 23(a)(2) ....................................................................................... 18, 20

Fed. R. Civ. P. 23(a)(3) .......................................................................................... 21

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

Fed. R. Civ. P. 23(a)(4) .......... 22
Fed. R. Civ. P. 23(b) .......... 18, 24
Fed. R. Civ. P. 23(b)(3) .......... 22, 23
Fed. R. Civ. P. 23(c)(2)(B) .......... 25
Fed. R. Civ. P. 23(e) .......... 1, 7
Fed. R. Civ. P. 23(e)(1) .......... 7, 25
Fed. R. Civ. P. 23(e)(1)(B) .......... 7
Fed. R. Civ. P. 23(e)(1)(B)(i) .......... 25
Fed. R. Civ. P. 23(e)(2) .......... 7, 8, 9
Fed. R. Civ. P. 23(e)(2)(C)(iii) .......... 14
Fed. R. Civ. P. 23(e)(2)(A) .......... 8
Fed. R. Civ. P. 23(e)(2)(B) .......... 9
Fed. R. Civ. P. 23(e)(2)(C)(i) .......... 10
Fed. R. Civ. P. 23(e)(2)(C)(iv) .......... 16
Fed. R. Civ. P. 23(e)(2)(D) .......... 16
Fed. R. Civ. P. 23(e)(3) .......... 16
Fed. R. Civ. P. 23(e)(4) .......... 17
Fed. R. Civ. P. 23(h)(1) .......... 14

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff seeks preliminary approval of a class action settlement with Defendant reached after extensive investigation and negotiated at arm's length with the help of an experienced mediator, Hon. Evelio M. Grillo (Ret.) The Settlement provides substantial financial compensation to Class Members. The Parties reached the Settlement after extensive investigation, litigation, and negotiation. The arm's-length negotiations facilitated by Judge Grillo occurred over several months and an all-day mediation.

The Settlement is the result of vigorous arm's-length negotiations, based upon extensive litigation efforts after consultation with experienced legal counsel. It constitutes a favorable recovery that falls well within the range of approval and is likely to meet all the approval factors required by Federal Rule of Civil Procedure 23(e) and Ninth Circuit precedent. Thus, Plaintiff requests that the Court preliminarily approve the Settlement, certify the proposed Classes, approve the Notices, and set a Final Approval hearing. Preliminary approval of the Settlement is warranted as it satisfies all the criteria for approval under Rule 23.

## II. FACTUAL BACKGROUND

**Nature of the Action:** Defendant offers financial security products, including a suite of insurance products, financial planning tools, retirement planning solutions, and educational services, all marketed to build, protect, and preserve wealth. Specifically, Defendants market life insurance policies, including term life, whole life, universal life insurance, and Indexed Universal Life products. First Am. Compl. (FAC) ¶2, ECF No. 18. As part of its business operations, Defendant requires consumers to provide it with their Private Information to receive Defendant's services. *Id.* Defendant then collects, aggregates, and stores this Private Information. *Id.* ¶8; Declaration of Jesenia A. Martinez ("Martinez Decl.") ¶3.

Around October 17, 2023, cybercriminals gained unauthorized access, compromising Class Members' Private Information (the "Data Incident"). FAC ¶3. Defendant issued a notice of the Data Incident on or around January 19, 2024. *Id.* ¶4. Plaintiff received Defendant's notice. *Id.* ¶14; Martinez Decl. ¶4.

Plaintiff retained Class Counsel and, together, they investigated the claims, the extent of the Data Incident, the damages that resulted, and would result from the Data Incident, to assert claims against Defendant as a class action. Declaration of Yvette Price ("Price Decl.") ¶¶1–5; Martinez Decl. ¶5.

Plaintiff filed her initial Complaint on December 20, 2024. Compl., ECF No. 1. Defendant filed a Motion to Dismiss the Complaint per Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 15. Plaintiff filed a First Amended Class Action Complaint on February 28, 2025. FAC, ECF No. 18. Defendant again moved to dismiss, and after the Parties briefed the Motion to Dismiss (ECF Nos. 21, 23–26), the Court held a hearing on May 12, 2025 and took the matter under submission. ECF No. 30. On July 21, 2025, the Court denied Defendant's Motion to Dismiss. ECF No. 32. Defendant filed its Answer on August 4, 2025. ECF No. 33. On September 30, 2025, the Court issued a Scheduling Order setting dates pertaining to discovery, expert disclosures, and class certification briefing and hearing date. ECF No. 38; Martinez Decl. ¶6.

**Settlement Discussions:** In the interest of exploring potential for early resolution, the Parties agreed to conduct a private mediation with Judge Grillo on November 25, 2025. Martinez Decl. ¶7. In advance of the mediation, the Parties agreed to an informal exchange of information and documents to reveal the Parties' strengths and weaknesses of their respective claims and defenses, and in order to have productive discussions with Judge Grillo. *Id*. ¶8.

After a full-day, arm's-length mediation session, a settlement was not reached but significant progress was made. In the months that followed, the Parties continued their negotiations with the assistance of Judge Grillo. These discussions

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

were ultimately successful. Martinez Decl. ¶9. The Parties informed the Court of the Settlement on January 16, 2026. ECF No. 41.

The Parties memorialized the terms of the Settlement in the Agreement presented to the Court with this Motion. The Parties, understanding the strengths and weaknesses of their respective claims and defenses, and after consultation with their respective counsel, believe that the Settlement is fair, reasonable, and beneficial to Class Members such that it warrants preliminary approval under Rule 23(e). Martinez Decl. ¶10.

## III. SETTLEMENT TERMS SUMMARY

The Settlement provides significant benefits to Class Members. Martinez Decl. ¶11. The Agreement's key terms include the following:

### A. The Settlement Classes

For settlement purposes only, the Parties agree to the certification of the Nationwide Class and California Class. Martinez Decl., Ex. 1 § I, ¶¶1.11 & 1.27.

### B. Settlement Benefits

Under the Settlement, Class Members may submit a Claim Form for reimbursement of expenses incurred because of the Data Incident, not to exceed $500 per Class Member.[2] Martinez Decl., Ex. 1, § V, ¶1.2 & Ex. A.

[2] These expenses could include: (i) unreimbursed bank fees; (ii) unreimbursed card reissuance fees; (iii) unreimbursed overdraft fees; (iv) unreimbursed charges related to unavailability of funds; (v) unreimbursed late fees; (vi) unreimbursed over-charge fees; (vii) long distance telephone charges; (viii) cell minutes (if charged by minute); internet usage charges (if charged by minute or by the amount of data usage and incurred solely as a result of the Data Incident) and text messages (if charged by the message and incurred solely as a result of the Data Incident); (ix) unreimbursed charges from banks or credit card companies; (x) postage, gasoline for travel, and other incidental expenses; (xi) interest on payday loans due to card cancellation or due to over-limit situations incurred solely as a result of the Data Incident; (xii) up to three (3) hours of documented lost time spent dealing with the Data Incident, e.g., time spent dealing with replacement card issues, reversing fraudulent charges, or closing or modifying accounts, but only if at least (1) full hour was spent and only if the time can be documented with reasonable specificity by answering the questions on the claim form; and (xiii) costs of credit report(s), credit monitoring, or other identity theft insurance product purchased by Class Members between October 17, 2023 and the date of the Preliminary Approval Order (where claimed with an affirmative statement by the Class Member that it was purchased primarily because of the Data Incident). *Id.*

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

In addition to expense reimbursement, Defendant will offer all Settlement Class Members 2 years of Cyex's Medical Shield Complete, which provides credit monitoring and $1 million in identity theft insurance through Cyex. Similar products are currently offered to the public for $24.99 per month. Martinez Decl., Ex. 1, § V, ¶1.3. After this Action was filed, Defendant spent $237,200.00 on information security enhancements[3] because of the Data Incident.[4] Martinez Decl., Ex. 1 § IV, ¶2.

Class Members may elect not to be part of the Class and not to be bound by the Settlement, provided that the Class Member submits a timely, complete, and sufficient exclusion request. Martinez Decl., Ex. 1 § VII. Class Members may object to the Settlement by mailing a timely written objection. Martinez Decl., Ex. 1 § VIII.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

[3] These enhancements included but are not limited to: (1) implementing a comprehensive cybersecurity transformation program, with the highest priority placed on eliminating identified root attack surfaces and modernizing identity and access security controls; (2) fully decommissioning the Citrix environment and migration to ShareFile and Windows 365 Cloud PCs, permanently removing the exploited vulnerability and segmenting user access; (3) implementing a passwordless, biometric, multi-factor authentication model through CyberArk Identity and Microsoft Entra ID, eliminating password-reuse risk and establishing phishing-resistant authentication; (4) reinforcing these measures by strict Conditional Access and U.S.-only geo-fencing policies, significantly reducing credential replay and international intrusion attempts; (5) implementing administrative privilege segmentation and Active Directory cleanup to further reduce privilege abuse risk; and (6) instituting BitLocker encryption and Microsoft Intune centralized device management to strengthen endpoint control and compliance. *Id.*, Ex. 1 § IV, ¶2.1.

[4] In addition, Defendant also (1) ensured detection and response capabilities were substantially elevated through deployment of Adlumin SIEM/XDR with 24×7 SOC monitoring and Huntress EDR with active threat hunting, reducing mean time to detect to under 15 minutes and enabling rapid automated containment; (2) took steps to modernize data protection controls via Microsoft 365 DLP, PII blocking, automated ShareFile retention, and full cloud backup coverage with defined RPO/RTO objectives, ensuring both breach prevention and recoverability; and (3) supported improvements in vulnerability management, dark web monitoring, firewall reconfiguration, and employee phishing training further reduced residual risk. In all, these prioritized enhancements transitioned Defendant to a Zero Trust–aligned, continuously monitored security architecture and advanced the organization to NIST Cybersecurity Framework maturity levels 3–4 (Managed to Adaptive), materially strengthening resilience, regulatory alignment, and long-term cyber defense posture. Martinez Decl., Ex. 1 § IV, ¶2.2.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

The Parties recognize that certain Class Members who request and receive Class Payments by check may not cash or deposit their checks within the 180 days before such checks expire. Accordingly, the Parties further recognize that there may be a remainder. On or about 210 days after Class Payments have been mailed, the Administrator will determine the amount of any remainder, taking into consideration any further anticipated Administrative and Notice Costs that may be incurred (the "Net Settlement Amount Remainder"). The Administrator will then cause the Net Settlement Amount Remainder to be paid to an organization that would appropriately advance the Parties' goal of benefitting the Settlement Class, to be agreed to by the Parties and approved by the Court, as the *cy pres* recipient of the Agreement. Martinez Decl., Ex. 1 § IV, ¶1.4.

**C. Distribution of Class Payments**

Within 30 days of the Effective Date, the Administrator shall distribute the Class Payments to Class Members who submitted Approved Claims via each Class Member's selected payment option: either via ACH transfer or check. Checks shall expire after 180 days. Martinez Decl., Ex. 1 § IV, ¶1.2.7.

**D. Class Notice and CAFA Notice**

Defendant will also pay for providing notice of the Settlement in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Administration. Martinez Decl., Ex. 1 § VI, ¶2.

Class Members will be notified of the Settlement by postal mail, email, and via a dedicated website. Martinez Decl., Ex. 1 § VI. Proposed Short Form and Long Form Notices are attached to the Agreement. *Id.*, Ex. 1, Exs. B–C.

**E. Release of Claims**

Upon the Effective Date, each Class Member, including Plaintiff, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims. Martinez Decl., Ex. 1 § V, ¶1.

Upon the Effective Date, Defendant shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Plaintiff, each and all of the Class Members, Class Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims, except for enforcement of the Agreement. Any other claims or defenses Defendant may have including, without limitation, any claims based upon or arising out of any retail, banking, debtor-creditor, contractual, or other business relationship with such persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims are specifically preserved and shall not be affected by the preceding sentence. Martinez Decl., Ex. 1 § V, ¶2.

Notwithstanding any term herein, neither Defendant or the Related Parties, shall have or shall be deemed to have released, relinquished or discharged any claim or defense against any person other than Plaintiff, each and all of the Class Members, and Class Counsel. Martinez Decl., Ex. 1 § V, ¶3.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

**F. Attorneys' Fees and Expenses, and Service Award**

The Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service award to Plaintiff until after the substantive terms of the Settlement had been agreed upon, other than that Defendant would pay reasonable attorneys' fees, costs, expenses, and a service award to Plaintiff as may be agreed or as ordered by the Court. Martinez Decl. ¶24. The Parties then negotiated and agreed as follows: (1) Defendant has agreed to pay, subject to Court approval, the amount of $300,000.00 to Class Counsel for attorneys' fees, plus reasonable costs and expenses of the Litigation; and (2) subject to Court approval, Defendant has agreed to pay service award in the amount of $5,000 to Plaintiff. Martinez Decl., Ex. 1 § IX.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

**G. Administrator**

The Parties propose to retain Simpluris as the Administrator to provide notice to the Class Members. Martinez Decl. ¶ 25. If agreeable to the Court, the Administrator will provide Notice by mail and email based on information associated with Class Members, to the extent available based on Defendant's records and through a website maintained by the Administrator. Martinez Decl., Ex. 1 § VI.

## IV. ARGUMENT

### A. The Proposed Settlement Warrants Preliminary Approval

As a matter of public policy, settlement is strongly favored for resolving disputes, especially in complex class actions. *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). Rule 23 requires court approval for any class action settlement. A district court's review of a proposed class action settlement is a two-step process. *First*, the court performs a review of the terms of the proposed settlement to determine whether to send notice to the class. *See* Fed. R. Civ. P. 23(e)(1). *Second*, after notice and a hearing, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2). A court may grant preliminary approval of a settlement upon a finding that it "will likely be able to" approve the settlement as fair, reasonable, and adequate at the final hearing. *See* Fed. R. Civ. P. 23(e)(1)(B).

Under Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "(i) will likely be able to: approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)'s factors supplement, rather than displace, the *Hanlon* factors. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. The Ninth Circuit has long considered the following factors when evaluating a class settlement, some of which overlap with

Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026.

### B. The Settlement Is Fair, Reasonable, and Adequate

#### 1. Class Members Have Been Adequately Represented

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) advisory committee's notes to 2018 amendment.

Rule 23(e)(2)(A) asks whether the plaintiff and plaintiff's counsel have adequately represented the class. This factor overlaps with the Ninth Circuit's factor regarding "the extent of discovery completed and the stage of the proceedings." *Hanlon*, 150 F.3d at 1026. As explained above, Plaintiff and Class Counsel satisfy this factor: they diligently prosecuted this action for years. Among other things, they investigated and drafted the Complaint; successfully survived a Federal Rule of Civil Procedure 12(b)(6) pleadings challenge; exchanged informal discovery; prepared a detailed mediation brief; and engaged in several settlement discussions with Defendant, including a lengthy mediation with Judge Grillo. Price Decl. ¶¶1–11; Martinez Decl. ¶¶3–10, 26.

Plaintiff has played an active role in the litigation as she has, among other things, reviewed and monitored the progress of the litigation and has regularly conferred with her counsel concerning the prosecution of the Action; and reviewed periodic updates and other correspondence from counsel, including significant pleadings, briefs, and Court Orders. Moreover, through counsel, Plaintiff participated in the ongoing negotiations to achieve this Settlement. With an

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

informed understanding, Plaintiff agreed to the Settlement. Price Decl. ¶¶4–11; Martinez Decl. ¶27.

Given Plaintiff and Class Counsel's demonstrated prosecution of this Action, they have adequately represented Class Members. Martinez Decl. ¶28. Courts give considerable weight to the opinion of experienced and informed counsel. *See, e.g., In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."). Plaintiff has had the benefit of the advice of knowledgeable counsel well-versed in data breach class actions. Martinez Decl. ¶¶3–10, 55–66. Class Counsel is highly experienced and has a long and successful track record in such cases. *Id.*

**2. The Settlement Is the Product of Extensive Arm's-Length Negotiations Among Experienced Counsel**

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." As noted, the settlement follows extensive litigation over the course of years and arm's-length negotiations. Martinez Decl. ¶¶3–10, 29. The Settlement was achieved only after an all-day mediation with Judge Grillo and continuing negotiations for months thereafter. *Id.* Class Counsel prepared submissions concerning, among other things, their respective views on the merits of the action, including Defendant's defenses, class certification, and issues relating to damages. *Id.* The protracted negotiations under the supervision of a neutral and experienced mediator establish that the settlement was reached at arm's length. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (stating that "involvement of a neutral" in negotiations "may bear on whether they were conducted in a manner that would protect and further the class interests."); *Federal Ins. Co. v. Caldera Med., Inc.*, No. 2:15-cv-00393-SVW-PJW, 2016 WL 5921245, at *5 (C.D. Cal. 2016); *Satchell v. Fed. Express Corp.*, Nos. C03-2659 SI, C 03-

2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"). The negotiations were always adversarial and at arm's length, which produced a result that is in Class Members' best interests. Martinez Decl. ¶29.

Before the Parties reached the Settlement, the Parties engaged in informal discovery, exchanging information and documents that enabled the Parties to "enter[] the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions and which are necessary for a robust negotiation." *Kulesa v. PC Cleaner, Inc.*, No. CV 12-0725 FMO (ANx), 2014 WL 12581769, at *10 (C.D. Cal. 2014); Martinez Decl. ¶¶3–10.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

**3. The Settlement Provides Substantial Benefits to the Classes**

Although Plaintiff and Class Counsel believe that the claims asserted are strong, they recognize the significant challenges and risks they would face moving forward, as well as the expense and length of continued litigation through class certification, summary judgment motions, trial, and likely appeals. They also considered potential risks with respect to enforcing a litigated judgment against Defendant. Martinez Decl. ¶30.

**The substantial benefits for the Classes, weighed against the costs, risks, and delay of further litigation support preliminary approval.** Rule 23(e)(2)(C)(i) and the Ninth Circuit's factors concerning the "strength of plaintiffs' case, the "risk, expense, complexity, and likely duration of further litigation," and "the amount offered in settlement," are also satisfied because the injunctive relief and $1,200,000 recovery provide a significant and immediate benefit to Class Members, especially in light of the costs, risks, and delay posed by continued litigation. *Hanlon*, 150 F.3d at 1026.

Here, the recovery is within the range of reasonableness given the complexities and risks of continued litigation, including the uncertainty of a greater recovery against Defendant. The merits of Plaintiff's claims are also not guaranteed. Plaintiff contends that, had Defendant implemented reasonable data security measures, the Data Incident may have been avoided; however, Defendant may convince a factfinder, or meet its burden at summary judgment, that no matter Defendant's security safeguards, even if meeting the highest standards, cybercriminals' sophisticated and novel tools would not be foreseeable or that proximate causation for Plaintiff's and Class Members' damages could not be proven. In addition, Plaintiff also recognizes that proving the amount of damages incurred by Class Members here would be an expensive, time-consuming, and uncertain proposition. Plaintiff anticipates that Defendant would argue that Plaintiff's claims would be limited to actual, non-speculative damages incurred. Further, Plaintiff anticipates Defendant would argue that there would be no way to connect any substantial damages to the Data Incident fairly traceable to Defendant's conduct. While Plaintiff disagrees, she acknowledges that the Court or the factfinder may find in Defendant's favor, potentially leaving Class Members without relief. Martinez Decl. ¶31.

In the face of a likely vigorous defense from Defendant, it is uncertain whether Plaintiff would prevail on critical issues like establishing Defendant's duty and breach of duty, Plaintiff's injuries as a result of the Defendant's breach of duty, and the viability of class certification. If Plaintiff did not prevail, she and Class Members would recover nothing. Even if Plaintiff did prevail, however, there was a possibility that recovery would be limited. Thus, even success in litigation might not have translated to a meaningful recovery. Martinez Decl. ¶32.

In the face of these risks and uncertainties, the Settlement therefore represents a substantial recovery when compared to Plaintiff's and Class Members' reasonably forecasted recovery. Because of the Settlement, Class

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

Members will receive timely, guaranteed relief and will avoid the risk of an unfavorable judgment or order on class certification. This is particularly true where the Settlement provides for credit monitoring services for all Class Members, as all Class Members are now at an increased risk of identity theft following the Data Incident and must now acquire the benefit of such services as soon as they possibly can. Martinez Decl. ¶33.

The Settlement provides relief for that trifecta of data breach injuries by providing benefits including: (1) actual out-of-pocket expenses due to the misuse of data or efforts to prevent the misuse of data; (2) reimbursement for lost time spent responding to the breach; and (3) preventing the risk of future harm due to the misuse of data from materialized. That is, any Class Member who suffered out-of-pocket losses or expended time to prevent loss of misuse of data may submit a claim for reimbursement. Class Members are eligible to receive credit monitoring to prevent the risk of harm from the misuse of their data, which is now in the hands of cybercriminals. Martinez Decl. ¶34.

The Settlement is in the range of reasonableness warranting notice to Class Members and an opportunity to object or opt-out. Martinez Decl. ¶35. Courts frequently approve class action settlements of data breach actions like this one. *See, e.g.*, *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-md-2994, 2024 WL 1554329, at *2, 8 (S.D. Fla. Apr. 10, 2024) (preliminarily approving a settlement providing reimbursement for time spent and out-of-pocket losses, and credit and identity theft monitoring); *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-2583, 2017 WL 9605206, at *2 (N.D. Ga. Sept. 22, 2017) (approving a claims-made settlement in a data breach action); *Alliance Ophthalmology, PLLC v. ECL Grp., LLC*, No. 1:22-cv-296, 2024 WL 3203226, at *2 (M.D.N.C. June 27, 2024) (approving a class action settlement that provided data breach victims with reimbursement for out-of-pocket expenses); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. Aug. 15,

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

2018) (granting motion for final approval with a claims-made settlement and fraud-monitoring services for the entire class); *Barletti v. Connexin Software, Inc.*, No. 2:22-CV-04676-JDW, 2024 WL 1096531, at *6 (E.D. Pa. Mar. 13, 2024) (granting preliminary approval to data breach settlement that provided class members the ability to file a claim for credit monitoring services, out-of-pocket losses; or an alternative cash payment); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 18107626, at *12 (E.D. Va. Sept. 13, 2022) (approving proposed allocation plan that allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services because it treated class members equitably).

When considering the risks of litigation, the uncertainties involved in achieving class certification, the burdens of proof necessary to establish liability, and the probability of an appeal of a favorable judgment, it is clear that the Settlement is within the ballpark of reasonableness. Accordingly, preliminary settlement approval is appropriate. Martinez Decl. ¶36.

**The proposed notice and claims process is effective and supports approval**. The proposed notice forms provide detailed information in plain terms. Martinez Decl., Ex. 1, Exs. B–C. They include all the information required by the Federal Rules of Civil Procedure and due process. The proposed Notice forms describe the proposed settlement and sets forth, among other things: (1) the nature, history, and status of the Action; (2) the definition of the Classes and who is excluded; (3) the reasons the parties have proposed the settlement; (4) the amount of the Gross Settlement Amount; (5) the estimated average distribution; (6) the Classes' claims and issues; (7) the Parties' disagreement over damages and liability; (8) the maximum amount of attorneys' fees and expenses that Class Counsel intends to seek in connection with final settlement approval; (9) the maximum amount Plaintiff will request in connection with her representation of the Classes; (10) the plan for allocating the Gross Settlement Amount; and (11)

the date, time, and place of the Final Approval Hearing. *Id.* The content of the proposed Long Form Notice and Short Form Notice are "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); Martinez Decl. ¶37.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members of this information. Martinez Decl. ¶37.

The claims process, and the damages recoverable under it, approximates the process (e.g., using a special master to account for damages post-verdict) and kind of damages Plaintiff anticipates Class Members would be able to recover, even after judgment. Moreover, a claims-made process makes sense here. Defendant is likely to argue that there is no evidence of wide-spread identity theft. Plaintiff contends such identity theft is likely. A claims-made process allows Class Members to indicate the damages they have incurred, offering an excellent, and difficult to replicate, barometer of actual damages suffered. A claims-made process also has the unique advantage of allowing Class Members to recover consistent with their individual damages, as compared to at a flat rate that does not account for variations between the experiences of Class Members. Therefore, a claims-made process is both fair and consistent with the type of recovery contemplated by Plaintiff's claims. Martinez Decl. ¶38.

**Class Counsel's attorneys' fees.** Rule 23(e)(2) (C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Class Counsel intends to seek an award of attorneys' fees of no more than 25% of the Gross Settlement Amount (which, given Class Counsel's lodestar to date exceeds

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

this requested amount,[5] would result in the application of a negative multiplier)[6] and expenses, which to date amount to $5,183.27. This fee request reflects the successful result achieved for Class Members, as well as the risks faced at trial and on appeal. Martinez Decl. ¶39. A fee request of no more than 33%, while slightly above the Ninth Circuit benchmark, would be consistent with other settlements approved in the Ninth Circuit. *See, e.g., Vizcaino v. Microsoft Corp*., 290 F.3d 1043 (9th Cir. 2002) (awarding attorneys' fees of 28% of the settlement).

Class Counsel will seek a fee based on the percentage method, which "align[s] the lawyers' interests with achieving the highest award for the class members, and reduc[es] the burden on the courts that a complex lodestar calculation requires." *In re Apple Inc. Device Performance Litig*., No. 5:18-md-02827-EJD, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021), *rev'd on other grounds*, 50 F.4th 769 (9th Cir. 2022). A 25% fee would amount to $300,000. Although an analysis of counsel's lodestar is not required for an award of attorneys' fees in the Ninth Circuit, it is often considered to ensure that an awarded fee would be reasonable. *In re Amgen Inc. Sec. Litig*., No. CV 7-2536 PSG (PLAx), 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016). The factual support for Class Counsel's fee and expense request will be detailed in its upcoming motion requesting fees and expenses however, to date, Class Counsel has spent approximately over 300 hours litigating the case with a lodestar value of more than $300,000. Martinez Decl. ¶40, Ex. 2.

---

[5] If preliminary approval is granted, Class Counsel will present their total lodestar in connection with their fee application at the final approval stage, after further detailed review and adjustment of its contemporaneous daily time entries to account for billing judgment.

[6] The Agreement states Plaintiff would request Attorneys' Fees of no more than 33%, Class Counsel seeks Attorneys' Fees of 25% per the Ninth Circuit's benchmark. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award.").

**4. No Other Agreements Exist**

Rule 23(e)(2)(C)(iv) and 23(e)(3) requires disclosure of any other agreements. The Parties do not have any other agreements other than Agreement for which they are seeking approval. Martinez Decl. ¶41.

**5. The Distribution Plan Treats Class Members Equally**

Rule 23(e)(2)(D) asks whether the proposed distribution plan treats class members equitably relative to each other. "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, No. C-07-5944 JST, 2016 WL 6778406, at *3 (N.D. Cal. 2016) (quoting *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1–2 (N.D. Cal. 1994)).

The distribution plan readily meets this standard: it treats all Class Members fairly in relation to their claims. Martinez Decl. ¶42; *see Khoja v. Orexigen Therapeutics, Inc.*, No. 15-cv-00540-JLS-AGS, 2021 WL 5632673, at *7 (S.D. Cal. 2021) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."); *Hefler v. Wells Fargo & Co.*, No. 15-cv-00540-JLS-AGS, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018). For purposes of recovery amounts, the distribution plan establishes a uniform, objective method for distributing awards. Martinez Decl., Ex. 1 § IV, ¶1.2; *see In re Nexus 6P Prod. Liab. Litig.*, No. 17-cv-02185-BLF, 2019 WL 6622842, at *9 (N.D. Cal. Nov. 12, 2019) ("Here, the Plan of Allocation was proposed by experienced counsel and has a reasonable and rational basis. The plan divides claimants into different groups . . . and distributes funds based on these groups."). The distribution plan will deter fraudulent claims and reasonably accounts for the differing claims dependent on costs and expenses incurred. Thus, because the plan

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

ensures the Class Members will be treated equitably relative to each other, it should be approved as fair, reasonable, and adequate. Martinez Decl. ¶42.

**6. Opportunity for Exclusion**

In accordance with Rule 23(e)(4), under the notice program, Class Members are provided with an opportunity to exclude themselves from the Settlement. Martinez Decl. ¶43 & Ex. 1 § VII.

**7. The Remaining *Hanlon* Factors Are Satisfied**

**There are risks of certification and maintaining class action status through trial.** Plaintiff and Class Members face risks inherent in all data breach actions. Defendant, for instance, would likely argue that Plaintiff and Class Members lack sufficient injuries to bring claims against it, including where the data has not been used for any attempted fraud or identity theft. That defense is commonly raised by defendants in data breach actions. *See, e.g.*, *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 372–73 (1st Cir. 2023). Defendant is also likely to vigorously defend against its liability and against the viability of class certification. While Plaintiff believes she would have prevailed on these points, they would likely be hotly contested and would lead to significant, complex, and prolonged motion practice. Martinez Decl. ¶43.

Plaintiff would need to prevail on both issues (liability and class certification) to ensure her claims went forth on a classwide basis and to afford an opportunity for Class Members to obtain any relief. Martinez Decl. ¶44; *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."). Both Parties would likely face significant risk and costs from a likely expert battle concerning whether Defendant's data security was unreasonable and negligent and competing expert testimony the viability of any classwide damages models. Martinez Decl. ¶45.

**The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight.** *Norris v. Mazzola*, No. 15-cv-04962-JSC, 2017 WL 6493091, at *8 (N.D. Cal. Dec. 19, 2017); *see also Hefler*, 2018 WL 6619983, at *9 ("That counsel advocate in favor of this Settlement weighs in favor of its approval."); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). Indeed, in a case like this one that has been diligently litigated, "'[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("'[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'"). Class Counsel has significant experience in complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. Martinez Decl. ¶¶3–10, 55–66.

## V. CERTIFICATION FOR SETTLEMENT PURPOSES IS PROPER

The Parties seek certification of the Classes for settlement purposes. Martinez Decl. ¶46. A party seeking to certify a class must demonstrate that it has met all four requirements under Rule 23(a)(2) and at least one of the requirements of Rule 23(b). *See Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Moreover, "it is the plaintiff's theory that matters at the class certification stage, not whether the theory will ultimately succeed on the merits." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 525 (C.D. Cal. 2011) (citations omitted). Rule 23's commonality analysis depends on whether a "basic theory of the [plaintiffs'] case" "can be proved on a classwide basis." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011). However, the fact that class members may have been




WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

affected by a defendant's uniform policies/practices to varying degrees or have suffered varying damages is not a bar to certification. *See Leyva v. Medline Indus. Inc*., 716 F.3d 510, 514 (9th Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

Courts have repeatedly found data breach classes meet the class certification requirements. *Attias v. CareFirst, Inc.*, 346 F.R.D. 1 (D.D.C. 2024); *Savidge v. Pharm-Save, Inc.*, No. 3:27-cv-186, 2024 WL 1366832 (W.D. Ky. Mar. 29, 2024); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2020 WL 6701992 (N.D. Ohio Nov. 13, 2020); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022). Indeed, data breach actions conform to the "policy at the very core of the class action mechanism . . . to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Here, as described below, both Rule 23(a) and (b) requirements are satisfied.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

### A. The Classes Meet the Requirements of Rule 23(a)

Rule 23(a) provides four prerequisites that any proposed class must meet. These prerequisites are: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative parties are typical of the claims or defense of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a)(1)–(4). The proposed Classes meets all four Rule 23(a) requirements.

**Numerosity:** Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The threshold for establishing numerosity is low, and '[c]lasses of 40 or more have been found

to be sufficiently numerous.'" *Meaden v. HarborOne Bank*, No. 23-CV-10467-AK, 2023 WL 3529762, at *2 (D.Mass. May 18, 2023) (citation omitted). Here, the Class is both so numerous that joinder is impracticable. The Classes consists of over 100,000 individuals, far surpassing the threshold number of 40. *Id.* Moreover, Class Members have already been identified by Defendant in its investigation of the Data Breach and its issuance of notice to affected individuals. *See Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 127–28 (S.D.N.Y. 2011) (holding defendants' business records may be used to ascertain class members). Numerosity is met here. Martinez Decl. ¶47.

**Commonality:** Under Rule 23(a)(2), the Classes must share common questions of law or fact. The commonality requirement is not demanding. Rather, it is a "low bar" and may be satisfied by a single common question of fact or law. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008). Commonality is met where the claims "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 347.

Here, the Classes share numerous common questions of law and fact, and the answers to those common questions will have classwide effect. To start, all Class Members provided Defendant with Private Information to procure Defendant's services, and all received a notice of the Data Incident. As a result of the Data Incident, each Class Member's Private Information was compromised. Consequently, Plaintiff and the Classes suffered similar injuries, including, among others: the risk of harm from the misuse of their data; the loss of privacy from cybercriminals' obtaining their personal health records; the loss in value of the services obtained from Defendant; and lost time investigating the Data Incident and preventing future harm. Martinez Decl. ¶48.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

While only one common question is sufficient to satisfy commonality, here, Plaintiff's and Class Members' claims present numerous additional common issues, including whether: (1) Defendant owed Plaintiff and Class Members a duty to reasonably secure their Private Information; (2) Defendant breached its duty by implementing inadequate data security, failing to protect data, and failing to patch vulnerabilities; (3) Defendant's breach of duty caused Plaintiff's and the Class Members' harm, including the theft of their Private Information; (4) Plaintiff and Class Members suffered harm due to the theft and potential misuse of Private Information; and, (5) Plaintiff and the Class Members' damages are reasonably quantifiable. The existence of several common legal questions and the overwhelmingly similarly factual issues presented by the Class Members' claims suffices to meet commonality here. Martinez Decl. ¶49.

**Typicality:** Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiff is typical of Class Members because her claims result from a similar course of conduct, namely, Defendant's alleged failure to reasonably secure Private Information. Price Decl. ¶1–11; Martinez Decl. ¶50; *see Barletti v. Connexin Software, Inc.*, No. 2:22-cv-04676, 2024 WL 1096531, at *3 (E.D. Pa. Mar. 13, 2024) (typicality satisfied where "each named plaintiff suffered unauthorized disclosure of their sensitive information, an identical harm to all class member"); *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 WL 6750844, at *3 (E.D. Va. Nov. 19, 2021) (typicality satisfied where plaintiffs and settlement class members were subject to the data breach and were alleged to have suffered the same type of injuries.). Plaintiff and Class Members have claims based on a common legal theory that Defendant owed them a duty to reasonably secure their sensitive data but failed to do so. Finally, Plaintiff and Class Members allege the same resulting harm from Defendant's alleged wrongdoing—the theft of their Private Information. Martinez Decl. ¶50.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

The fact that some circumstances may be specific to each Class Member, including the extent and amount of damages from the Data Incident, does not defeat typicality. *Beck v. Maximus, Inc.*, 547 F.3d 291, 296 (3d Cir. 2006). Given that Plaintiff and Class Members have common claims based on the same wrongdoing and each experienced the same types of harm, no conflict of interest exists to undermine typicality. Typicality here is satisfied.

**Adequacy:** The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1) the proposed representative Plaintiff does not have conflicts of interest with the proposed class, and (2) Plaintiff is represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

The Rule 23(a) adequacy requirement is met here as Plaintiff has and will represent Class Members with a focus and zeal true to the fiduciary obligation that she has undertaken. Price Decl. ¶¶1–11; Martinez Decl. ¶¶3–10; 51. Plaintiff's Counsel also satisfies the Rule 23(a)(4) requirement. *See Hanlon*, 150 F.3d at 1020 ("will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"). Class Counsel have extensive complex, class action experience, particularly with data breach actions, in state and federal court, and have served as Class Counsel is numerous cases appointed by state and federal courts around the country. Martinez Decl. ¶¶55–66..

**B. The Classes Meet the Requirements of Rule 23(b)**

Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594. "The superiority inquiry [ ] ensures that litigation by class action will 'achieve

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2017 WL 4621777, at *21 (D. Mass. Oct. 16, 2017) (citation omitted). Here, Plaintiff readily meets both requirements.

**Common Issues Predominate:** A Rule 23(b)(3) settlement class must show that common questions "predominate over any questions affecting only individual [class] members." *Amgen Inc. v. CT Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Here, common issues predominate over individual issues because each Class Member would rely on common factual evidence to establish Defendant's liability. Each Class Member's claim centers on Defendant's alleged inadequate data security which, Plaintiff alleges, Defendant knew or should have known could result in a data breach and harm Plaintiff and the Class. Despite that knowledge, Plaintiff contends Defendant used knowingly inadequate data security. Those facts would establish Defendant's duty and breach of duty on a classwide basis and, proof of those facts depend exclusively on Defendant's knowledge and actions. Martinez Decl. ¶52. Thus, those elements of each Class Member's claim are resolvable in a "single stroke" and do not depend on any individualized issue. *Dukes*, 564 U.S. at 347; *see also In re Brinker Data Incident Litig.*, No. 3:18-cv-0686, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (granting class certification because common questions predominated, including "whether [defendant] had a duty to protect customer data, whether [defendant] knew or should have known its data systems were susceptible, and whether [defendant]

failed to implement adequate data security measures . . . ."), *vacated in part sub nom*. *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023).

**A Class Action Is Superior:** Rule 23(b) requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." This case presents the "quintessential class action" because it "involves thousands of plaintiffs who were subjected to the same . . . wrongdoing and whose recovery is likely to be small" and "absent a class action . . . claimants would likely not seek legal redress." *Silver Buckle Mines, Inc. v. United States*, 132 Fed. Cl. 77, 103 (Fed. Cl. 2017).

Where a "large number of potential plaintiffs" share common claims, "certifying the class will allow a more efficient adjudication of the controversy than individual adjudications would." *Roberts v. Source for Pub. Data*, No. 08-CV-04167-NKL, 2009 WL 3837502, at *7 (W.D. Mo. Nov. 17, 2009). "The superiority inquiry thus ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Solodyn*, 2017 WL 4621777, at *21 (citation omitted).

Here, class resolution is superior to other available means for the fair and efficient adjudication of the claims asserted here. *First*, the potential damages suffered by individual Class Members are relatively low-dollar amounts and would be uneconomical to pursue on an individual basis given the burden and expense of prosecuting individual claims. *In re Mednax Svcs. Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *5 (S.D. Fla. Apr. 10, 2024) (superiority satisfied in data breach settlement where the "amount in dispute for individual class members is too small, the technical issues involved are too complex, and the expert testimony and document review is too costly" and "individual prosecution of claims would be prohibitively expensive, needlessly

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

delay resolution, and may lead to inconsistent rulings."). *Second*, there is little doubt that resolving all Class Members' claims jointly, particularly through a class-wide settlement negotiated on their behalf by counsel well-versed in class action litigation, is superior to a series of individual lawsuits and promotes judicial economy. *See Cap. One*, 2022 WL 18107626, at *5 (recognizing that litigating the claims of millions of individuals impacted by a data breach would be inefficient). Martinez Decl. ¶53.

## VI. THE NOTICE PROGRAM WARRANTS APPROVAL

Rule 23(e)(1)(B)(i) requires that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2)." Rule 23(c)(2)(B) requires notice of a settlement of a class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

Class Members will be notified of the Settlement by postal mail, email, and via a dedicated website. Martinez Decl., Ex. 1 § VI. The notices are written in plain language and provide the relevant information and answers to most questions that Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the forms of notice collectively describe: the nature of the Action; the definition of the Classes; the terms of the Settlement; the attorneys' fees and expenses that may be sought; the procedure for objecting or opting out; the procedures for submitting claims; the proposed Distribution Plan; and the date and place of the Final Approval Hearing. Martinez Decl., Ex. 1, Exs. B–C.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval Settlement.

Dated: March 23, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Jesenia A. Martinez*
Thiago M. Coelho
Chumahan B. Bowen
Jennifer M. Leinbach
Jesenia A. Martinez
Jesse S. Chen

*Attorneys for Plaintiff and all others similarly situated*